**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MORNINGSTAR BLACKHORSE,

      Plaintiff,

v.                                   Case No. 1:25-cv-00328-LF-KRS

UNITED STATES OF AMERICA,
UNITED STATES POSTAL SERVICE;
DALE WEST, JR.; SUSAN "SUZIE" YARBRO;
MICHAEL KING; and
YET-TO-BE-IDENTIFIED CO-CONSPIRATORS
AND/OR OTHER LIABLE INDIVIDUALS,

      Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

This matter comes before the Court on defendants'[1] Motion to Dismiss, filed July 18, 2025. Doc. 18. Defendants move to dismiss Ms. Blackhorse's complaint (Doc. 1) for lack of subject matter jurisdiction and for failure to state a claim, and they move to dismiss her amended complaint (Doc. 11), as untimely and futile. *Id.* at 1. Having reviewed the parties' submissions and the applicable law, the Court grants in part and denies in part the motion to dismiss for the reasons discussed below.

## BACKGROUND

In Ms. Blackhorse's initial and amended complaint, Docs. 1, 11, she alleges that she began her employment with the United States Postal Service ("USPS") in February 2023. Doc. 1 at 3; Doc. 11 at 3. She alleges that her supervisor, Dale West, Jr. ("West"), was a mixed-race

---

[1] Specifically, this motion was brought on behalf of the United States, the United States Postal Service, and employees Susan Yarbro, Dale West, Jr., and Michael King in their official capacities. Doc. 18 at 1 n.1.

(non-native, Hispanic) man who engaged in discriminatory misconduct against her because she was of Native American descent and was female. Doc. 1 at 3–4; Doc. 11 at 4. Specifically, she alleges that she "was instructed by Defendant West, her immediate supervisor, to act in violation of USPS policies," and that when she refused to violate those policies, "she was retaliated against with a total disregard for her rights and feelings." Doc. 1 at 4; Doc. 11 at 4. She further alleges that she "was disrespected and unfairly criticized by Defendant West regarding her work performance, medical appointments and requests for leave," and that this treatment resulted "in intentional infliction of physical and emotional distress upon Ms. Blackhorse." Doc. 1 at 4; Doc. 11 at 4. She claims that she was not paid in full for her work hours, that Mr. West was disrespectful to Native American customers and to Ms. Blackhorse, and that Mr. West directed post office staff "to participate in the improper return or delayed delivery of mail" in violation of applicable laws or regulations and "threatened personnel action against any employee who did not do as he instructed." Doc. 1 at 4–5; Doc. 11 at 5. Ms. Blackhorse later "bl[e]w the whistle on" Mr. West "by reporting his misconduct to management," and she alleges that in response, Mr. West mistreated her "more often and more severely." Doc. 1 at 5–6; Doc. 11 at 5–6. She also claims that she "discovered that Defendant West was engaging in" sexual activity in the workplace "by keeping 'sex toys' on the USPS premises in the Post Office storage unit," into which he often locked himself "for extended periods of time during working hours." Doc. 1 at 6; Doc. 11 at 6.

She alleges that on August 30, 2023, she "felt physically threatened by Mr. West and was genuinely concerned for her physical safety following an especially-hostile verbal assault perpetrated on her by him," and in response she called the Jicarilla Apache Police Department to make a report. Doc. 1 at 7; Doc. 11 at 7. She also filed a formal complaint against Mr. West to his

2

supervisor, Defendant Susan Yarbro. Doc. 1 at 8–9; Doc. 11 at 9. On or about August 31, 2023, she reported her concerns to Defendant Michael King. Doc. 1 at 9; Doc. 11 at 9. She alleges that no actions followed to address this conduct or ensure her safety. Doc. 1 at 9; Doc. 11 at 9.

Ms. Blackhorse alleges that she took medical leave in early September 2023 based on stress-related illnesses including migraine headaches and panic attacks. Doc. 1 at 10; Doc. 11 at 10. On September 6, 2023, Mr. West issued Ms. Blackhorse an AWOL (or "absent without leave") letter despite "her requests for medical leave with supporting documentation." Doc. 1 at 10; Doc. 11 at 10. It is the Court's understanding from the complaint that Ms. Blackhorse never returned to work. She alleges that she attempted to resolve the situation through other channels, but after those proved unfruitful, she eventually submitted an Equal Employment Opportunity ("EEO") complaint on July 1, 2024. Doc. 1 at 12; Doc. 11 at 12. "After Ms. Blackhorse submitted her EEO complaint, and nearly ten months after her last paid working date, she received another AWOL letter from the USPS, dated July 12, 2024[.]" Doc. 1 at 12; Doc. 11 at 12. On September 10, 2024, she received notification that she was to be removed from the Postal Service no sooner than thirty days from receipt of the letter. Doc. 1 at 12; Doc. 11 at 12.

Following these events, Ms. Blackhorse filed her initial complaint alleging 1) gender/race/national origin discrimination and illegal retaliation in violation of Title VII; 2) gender/race/national origin discrimination and illegal retaliation in violation of the New Mexico Human Rights Act, N.M. Stat. Ann. § 28-1-7 *et seq.*; 3) violations of the Federal Whistleblower Protection Act, 5 U.S.C. § 2303(b)(8); 4) violations of the New Mexico Whistleblower Protection Act, N.M. Stat. Ann. § 10-16C-1 *et seq.*; 5) violations of USPS policies and the USPS Employee and Labor Relations Manual Sections 666.18 and 666.3; 6) tortious interference with employment contract and intentional/reckless/negligent infliction of physical and emotional

distress; 7) breach of the implied covenant of good faith and fair dealing in Plaintiff's employment contract; 8) tortious interference with employment contract; 9) intentional/reckless/negligent infliction of emotional distress/outrageous misconduct; 10) negligent training and supervision; 11) violations of the Federal Tort Claims Act, 28 U.S.C. § 2679(b)(1); and 12) assault. *See* Doc. 1 at 13–27. In her amended complaint, Ms. Blackhorse added a count for civil conspiracy. Doc. 11 at 28.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The Court "accept[s] the well-pleaded facts alleged as true and view[s] them in the light most favorable to the plaintiff." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

## ANALYSIS

Defendants move to dismiss each of Ms. Blackhorse's claims. The Court begins with their arguments against amendment to determine which complaint is the operative one for the purposes of the motion to dismiss.

### I.    Amendment

Defendants argue that the amended complaint is both untimely and futile. Doc. 18 at 28. Ms. Blackhorse filed her initial complaint on April 3, 2025. Doc. 1. Federal Rule of Civil Procedure 15(a) allows a plaintiff to amend once as a matter of right no later than twenty-one

days of serving it, *or* twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f). She served the initial complaint on different defendants on different dates, with service to some defendants as early as mid-April and the last date of service being June 10, 2025, to defendant Dale West, Jr. Docs. 6–10. She filed her amended complaint on June 23, 2025, before any responsive pleading was filed and before Defendants filed their motion to dismiss under Rules 12(b)(1) and 12(b)(6). *See* Doc. 11. Because the amended complaint was filed within twenty-one days of service on at least one defendant and well before the motion to dismiss was filed (and before any responsive pleading), it was timely. *See* WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1483 (3d ed.) ("The 2023 amendment, by changing 'within' to 'no later than,' clarified that the right to amend as a matter of course, for a pleading to which a responsive pleading is required, continues without interruption until 21 days after the earlier of the events described in Rule 15(a)(1)(B)," i.e., service of a responsive pleading or a Rule 12(b) motion.). The amended complaint is the operative complaint.

Because Plaintiff's amendment was timely and does not require court approval, the Court will construe Defendants' arguments regarding futility as arguments in favor of dismissal. These matters are subject to the same standard of analysis. *See Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). And because the civil conspiracy claim relies on the validity of the other claims (i.e., conspiracy to discriminate), the Court considers the other claims first. *See* Doc. 11 at 28 ("All of the named Defendants . . . conspired . . . to commit, and did commit, *one or more or all of the violations of law set forth hereinabove* . . . .").

## II.    Count I

Defendants seek to dismiss Ms. Blackhorse's Title VII discrimination and retaliation claims because she failed to timely exhaust her EEO claim. Doc. 18 at 6. They argue that because Ms. Blackhorse alleges that she did not return to work after September 6, 2023, that was the last date of any alleged discrimination or harassment. *Id.* at 7. Yet, they argue, she did not submit her initial EEO inquiry until July 1, 2024, ten months later. *Id.* They point to regulations requiring an employee to initiate contact with an EEO counselor within forty-five days of the alleged misconduct. *Id.* Ms. Blackhorse responds that she experienced "continuing retaliation well after August 30, 2023," including multiple discrete retaliatory actions within forty-five days of her EEO contact. Doc. 23 at 9–10. In the alternative, she argues that equitable tolling is appropriate. *Id.* The Court addresses each argument below.

Part 1614 of Chapter 29 of the Code of Federal Regulations governs the process by which federal employees must exhaust their administrative remedies under Title VII. *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020). Section 1614.105 requires an "aggrieved person" to "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). "For hostile work environment claims, only one of the alleged acts contributing to the alleged hostile environment must occur within the 45-day reporting period." *Berry v. Bondi*, No. 25-2014, 2026 WL 574889, at *2 (10th Cir. Mar. 2, 2026) (unpublished). "A plaintiff's failure to file an EEOC charge regarding a discrete employment incident . . . permits the employer to raise an affirmative defense of failure to exhaust." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020). Defendants raise this matter as an affirmative defense, Doc. 18 at 6, and the general rule is that a defendant bears the burden of proving its

affirmative defenses, *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008). Defendants have borne this burden.

The amended complaint alleges that Ms. Blackhorse took medical leave in "early September of 2023," then received an AWOL letter on September 6, 2023. Doc. 11 at 10. She then discusses actions of the Jicarilla Apache Nation, *id.* at 10–11, and her own actions in communicating with the president of the New Mexico Workers Union, *id.* at 11. However, the amended complaint does not contain any other allegations of misconduct by the USPS or Defendant West against Ms. Blackhorse before she submitted[2] her EEO complaint on July 1, 2024. *See id.* at 11–12. Ms. Blackhorse alleges that the USPS's failure to address her complaints, discontinuation of her email address, refusal to acknowledge her medical leave documentation, and "[leaving] her in a suspended state of limbo where she was neither reinstated nor formally terminated" all qualify as actions of discrimination or harassment and that these failures to act continued throughout her period of medical leave. Doc. 23 at 10. The amended complaint does not include the date that Ms. Blackhorse's email address was disabled, nor is it clear that disabling an employee's email address while that employee is on an extended period of leave constitutes a discriminatory or retaliatory action in violation of Title VII. The other allegations are of non-action: that her employer did not address her complaints or respond to her emails about her return-to-work schedule. Doc. 11 at 10; Doc. 11-5 at 3. Ms. Blackhorse has not provided, and the Court has not found, case law indicating that continued inaction of this type,

---

[2] The regulations require a complainant to "initiate contact with a Counselor" within the 45-day period, not to file the initial EEO complaint within that time. 29 C.F.R. § 1614.105(a). Nonetheless, Ms. Blackhorse does not allege that she contacted an EEO counselor within the 45-day period. *See generally* Docs. 11, 23.

while an employee is not even present at work, is sufficient to "reset" the 45-day limitations period to contact an EEO counselor.

Nor do dates within forty-five days *after* her EEO complaint qualify. Ms. Blackhorse further argues that her amended complaint includes allegations that Defendant West issued her an "AWOL" letter on July 12, 2024, and the USPS issued her a Notice of Removal on September 6, 2024, both of which were within forty-five days *after* July 1, 2024, when she submitted her EEO complaint. This argument is unavailing: these matters took place after the EEO complaint was submitted and are not contained within it. *See* Doc. 11-5 at 2–3. In fact, as Defendants point out, these events also have not been timely exhausted because they are not included in her EEO complaint. Doc. 28 at 3. To exhaust incidents that occur after the filing of an EEO claim, a plaintiff must file a new EEO claim or amend her original EEO claim to add the incidents. *Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227 (10th Cir. 2014); *Martinez v. Potter*, 347 F.3d 1208, 1210–11 (10th Cir. 2003) (incidents occurring after the filing of an EEO complaint must be exhausted in a separate complaint). The fact that Ms. Blackhorse experienced another AWOL notice and a formal discharge after she filed her EEO complaint—a complaint that did not include these events—does not render the EEO complaint timely.

Finally, Ms. Blackhorse argues that equitable tolling is appropriate because she was not aware of the 45-day period and because she was under severe psychological distress. Doc. 23 at 14. Equitable tolling is required

> when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a)(2). "[T]he obligation to demonstrate timeliness in filing a charge is a condition precedent to suit" and is plaintiff's burden to carry. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1167 (10th Cir. 2007). Equitable tolling is appropriate in the Title VII context "where the plaintiff has been deceived, lulled into inaction, actively misled, or has in some extraordinary way been prevented from asserting his or her rights." *Id.* at 1168 n.13 (quotation marks omitted). Ordinary unawareness is not sufficient. *Jara v. Standard Parking*, 701 F. App'x 733, 735 (10th Cir. 2017). With regard to deceit, Ms. Blackhorse has pled that Defendant West's supervisor, Defendant Yarbro, told Ms. Blackhorse that her only option was to quit her job at the post office. Doc. 11 at 8. However, the evidence does not suggest that Ms. Blackhorse was in fact deceived or misled by this statement; she pursued remedies through her union. Doc. 28 at 13; Doc. 11 at 11. Similarly, there is no evidence that Ms. Blackhorse experienced such severe psychological distress that she could not pursue her EEO complaint. Her diligence in pursuing remedies through her union demonstrates that the mental health symptoms she alleges in her amended complaint did not prevent her from seeking redress through other channels.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss with respect to Ms. Blackhorse's Title VII claims.

### III.    Counts II–IV

Ms. Blackhorse concedes that Count II (her New Mexico Human Rights Act claim) is not viable because USPS employees are not covered by state statutes. Doc. 23 at 18–19. The Court will grant dismissal of this claim. Ms. Blackhorse may continue to rely on the factual allegations in the section of her complaint addressing this claim if those allegations support other claims.

Ms. Blackhorse concedes that Counts III and IV are not viable as a matter of law. *Id.* at 19. The Court GRANTS dismissal of these claims. Ms. Blackhorse may continue to rely on the

factual allegations in the sections of her complaint addressing these claims if those allegations support other claims.

### IV.    Counts V–VIII (Contract[3] Claims)

Four contract claims exist in the amended complaint: violations of USPS policies and the USPS Employee and Labor Relations Manual ("ELM") (Count V), tortious interference with employment contract causing physical and emotional distress (Count VI), breach of the implied covenant of good faith and fair dealing in Plaintiff's employment contract (Count VII), and tortious interference with employment contract (VIII).

### A.  Existence of a Contract

The Court takes Defendants' arguments out of order to begin with whether Ms. Blackhorse adequately pled the existence of an employment contract at all, let alone one that was breached, violated, or tortiously interfered with. Postal workers serve by appointment, not by contract. 29 U.S.C. § 1001(a) ("[T]he Postal Service shall appoint all officers and employees of the Postal Service."); *Reeder v. Frank*, 813 F. Supp. 773, 779 (D. Utah. 1992); *O'Neal v. Donahoe*, 802 F. Supp. 2d 709, 714–15 (E.D. Va. 2011) (collecting cases); *see also Riplinger v. United States*, 695 F.2d 1163, 1164 (9th Cir. 1983) ("[F]ederal employees serve by appointment, not by contract."). Indeed, Ms. Blackhorse does not plead the existence of an employment contract as a fact in this matter, nor does she argue in her response that she was hired pursuant to an employment contract as that term usually is understood. Rather, she argues that "[w]hether the ELM (or related manuals) create enforceable contractual obligations involves disputed facts and is not suitable for being dismissed at this stage." Doc. 23 at 24. That is, her argument appears to

---

[3] Defendants labeled these claims as contract claims in their briefing, *see* Doc. 18 at 18, so the Court uses the same language for clarity and consistency. However, two of these claims (Counts VI and VIII) are tort claims involving a contract.

be that the ELM and other manuals created enforceable obligations amounting to a contract. An employer's words or conduct can create an implied contract modifying an at-will employment relationship under New Mexico law. *West v. Wash. Tru Solutions, LLC*, 2010-NMCA-001, ¶ 6, 224 P.3d 651, 653, 147 N.M. 424, 426.

But, critically, this argument is only argument—it does not appear in the amended complaint, which gives no indication whatsoever as to the source of any contract that may exist. Ms. Blackhorse makes no reference to other manuals in her amended complaint; Count V states that she faced retaliation "in violation of the USPS Policies set forth in USPS Employee and Labor Relations Manual, Sections 666.18 and 666.3, which are incorporated herein by reference thereto." Doc. 11 at 20. Further, multiple cases have found that the ELM does not allow for a private right of action. *See Royster v. DeJoy*, No. GLR-17-2495, 2020 WL 5231314, at *3 (D. Md. Sept. 2, 2020), *aff'd*, *Royster v. DeJoy*, 834 F. App'x 41 (4th Cir. 2021); *Thompson v. Brennan*, No. 17-cv-03798, 2018 WL 1626701, at *3 (N.D. Cal. Apr. 4, 2018); *see also O'Neal*, 802 F. Supp. 3d at 714 (rejecting argument that ELM constitutes or contributes to implied employment contract). Because of these issues, the amended complaint fails to allege that an employment contract exists at all.

Rule 12(b)(6) pleading standards require the Court to reject "naked assertions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim must be "plausible on its face," and a court need not accept "a legal conclusion couched as a factual allegation." *Id.* Ms. Blackhorse has pled no factual allegations supporting the reasonable inference that a contract existed. She only has pled legal conclusions—that a contract was breached—skipping over the foundational question of whether a contract existed at

all. This is insufficient under *Iqbal*. Accordingly, the Court GRANTS the motion to dismiss as it pertains to Counts V–VIII.

## V.    Counts IX–XII (Tort Claims)

Four tort claims exist in the amended complaint: intentional/reckless/negligent infliction of emotional distress (Count IX), negligent training and supervision (Count X), violations of the Federal Tort Claims Act ("FTCA") (Count XI),[4] and assault (Count XII). Defendants argue that Ms. Blackhorse's tort claims are subject to the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8102(a), and therefore are preempted, *see id.* § 8116(c). Doc. 18 at 22. FECA functions as a workers' compensation arrangement for federal employees. If there is a substantial question about whether FECA covers the claims at issue in this case, the Court is required to stay this matter pending a coverage determination by the Secretary of Labor. *Farley v. United States*, 162 F.3d 613, 616 (10th Cir. 1998). Ms. Blackhorse disputes only preemption and dismissal under FECA; she argues that "courts retain jurisdiction over tort claims unless and until the Secretary of Labor conclusively determines that the injury is covered by FECA." Doc. 23 at 25. This approach is compatible with the Court's decision to stay the case in the presence of a substantial question about FECA coverage.

*Farley* indicates that FECA "covers work-related emotional distress injuries in some instances," including emotional distress resulting from sexual harassment. 162 F.3d at 616 (citing *Swafford v. United States*, 988 F.2d 837, 840 (10th Cir. 1993), among others). At least one judge in this District has held that to the extent that negligent supervision claims arise from a government employer's failure to investigate and resolve an employee's complaints of wrongful

---

[4] The Court understands the FTCA claim to encompass the other torts listed; that is, the FTCA is the legal vehicle through which Ms. Blackhorse brings tort claims against a federal entity.

12

conduct and threats by coworkers, those claims must be stayed for the Secretary of Labor to determine whether FECA coverage exists. *Manzanares v. Abraham*, No. 1:03-cv-00309-MCA-KBM, 2004 WL 7337986, at *3 (D.N.M. Apr. 28, 2004) (Armijo, J.). Assault, arising from Defendant West yelling at Ms. Blackhorse while physically approaching her in a threatening manner, also raises a substantial question regarding FECA coverage due to its similarity to the other tort claims at issue in this case. The Court is without jurisdiction over FTCA claims if FECA applies. *Tippetts v. United States*, 308 F.3d 1091, 1094 (10th Cir. 2002).

Given the above case law, there is a substantial question regarding whether FECA covers Ms. Blackhorse's claims in Counts IX–XII. The Court therefore will STAY this case pending a determination of the same by the Secretary of Labor. In the meantime, the Court DENIES WITHOUT PREJUDICE Defendant's motion to dismiss with respect to these claims. If FECA does not cover these claims and they return to this Court's jurisdiction, Defendants may file a renewed motion to dismiss these claims.[5]

## VI.    Count XIII

Finally, the Court considers the civil conspiracy claim in Ms. Blackhorse's amended complaint. Defendants argue that Ms. Blackhorse's civil conspiracy claim fails to state a jurisdictional authority and lacks sufficient factual basis to suggest that two or more defendants conspired together in a shared effort to deprive Ms. Blackhorse of her rights. Doc. 18 at 30–31. The Court interprets the "jurisdictional authority" language to refer to the fact that the amended complaint does not cite 42 U.S.C. §§ 1985 and 1986 in its section on civil conspiracy. Earlier

---

[5] The Court does not address Defendants' remaining arguments because if FECA covers Ms. Blackhorse's claims, this Court loses jurisdiction over those claims. Thus, it is inappropriate to "assume without deciding" that FECA does not apply (i.e., to assume without deciding that the Court has jurisdiction) and reach merits questions about dismissal of the claims.

13

paragraphs of the complaint, however, designate the laws under which Ms. Blackhorse brings the complaint and the basis for this Court's jurisdiction. *See* Doc. 11 at 1–2. Looking to the section on civil conspiracy, the Court believes that the words "civil conspiracy" are enough to put defendants on notice that these statutory provisions likely are implicated, particularly in a civil rights claim such as this one with earlier references to the Civil Rights Acts of 1964 and 1991. *See Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008) (discussing the notice pleading standard in light of *Twombley*). The Court finds that the missing reference to the specific statutory provisions in Count XIII is not sufficient to dismiss this count for lack of jurisdiction.

As for the factual basis for the conspiracy claim, the amended complaint alleges that "Ms. Blackhorse was inappropriately rebuked by Defendant Yarbro for reporting West's verbal assault and threats to the police, and Ms. Blackhorse subsequently overheard Defendant West discussing with Defendant King 'how to get rid of' her [Ms. Blackhorse]." Doc. 11 at 9. The amended complaint pleads civil conspiracy against all defendants, not solely Defendants West and King, but no further allegations discuss any actions in concert by any of the other defendants. As a result, the Court must dismiss Count XIII against all defendants other than Defendants West and King.

Even pertaining to Defendants West and King, the claim cannot survive. A civil conspiracy claim under Section 1985(3) requires a conspiracy to deprive the plaintiff of equal protection or equal privileges and immunities under the law; a claim under this statute must involve "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). And a Section 1986 claim requires an underlying Section 1985 claim, so the underlying equal-protection issue remains at play in Section 1986 as well. *See* 42 U.S.C. § 1986 (applying to "every person who, having knowledge

14

that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed . . .”). Ms. Blackhorse's Title VII claim has been dismissed, and her surviving tort claims do not appear to implicate equal protection or equal privileges and immunities under the Constitution. *See* Doc. 11 at 28 (“All of the named Defendants . . . conspired . . . to commit, and did commit, *one or more or all of the violations of law set forth hereinabove . . . .*”). Therefore, the Court will dismiss Count XIII.

## CONCLUSION

The Court GRANTS the motion to dismiss (Doc. 18) as it pertains to Counts I–VIII and Count XIII. It DENIES WITHOUT PREJUDICE the motion to dismiss as it pertains to Counts IX–XII.

The Court sua sponte STAYS this case pending the Secretary of Labor's determination of whether FECA covers Ms. Blackhorse's tort claims. Ms. Blackhorse's counsel is ordered to file a status report by Monday, June 1, 2026, regarding whether that determination has been made.

It is so ordered.

_____
LAURA FASHING
UNITED STATES MAGISTRATE JUDGE